1

2

3

4

5

6

7

8

9

10                         UNITED STATES DISTRICT COURT

11                         SOUTHERN DISTRICT OF CALIFORNIA

12

13   D.H., by and through her Guardian Ad          )   Civil No. 09-cv-2621-L(NLS)
     Litem, KEVIN HARRINGTON,                       )
14                                                  )   **ORDER:**
                         Plaintiff,                 )
15                                                  )   **(1) GRANTING DEFENDANT'S**
     v.                                             )   **MOTION FOR SUMMARY**
16                                                  )   **JUDGMENT [DOC. 35], AND**
     POWAY UNIFIED SCHOOL DISTRICT,                 )
17                                                  )   **(2) DENYING PLAINTIFF'S CROSS-**
                         Defendant.                 )   **MOTION FOR SUMMARY**
18                                                  )   **JUDGMENT [DOC. 36]**

19        On November 19, 2009, Plaintiff D.H., by and through her Guardian At Litem, Kevin

20   Harrington, commenced this action against Defendant Poway Unified School District ("the

21   District").  D.H. alleges violations of § 504 of the Rehabilitation Act, and violations of the

22   Americans with Disabilities Act ("ADA").  She also seeks the reversal of an Office of

23   Administrative Hearing ("OAH") decision, which ruled against D.H. after she filed a due-

24   process complaint under the Individuals with Disabilities Education Act ("IDEA").  Now

25   pending before the Court are the parties' cross-motions for summary judgment.

26        The Court found these motions suitable for determination on the papers submitted and

27   without oral argument.  *See* Civ. L.R. 7.1(d.1).  (Doc. 44.)  For the following reasons, the Court

28   **GRANTS** Defendant's motion (Doc. 35), and **DENIES** Plaintiff's cross-motion (Doc. 36).

1    I.      BACKGROUND[1]

2          D.H. is a deaf student eligible for special education who is attending school in the Poway

3    Unified School District.  She has moderate-to-profound hearing loss, and a cochlear implant in

4    her right ear and uses a hearing aid in her left ear.  The cochlear implant is an electronic device,

5    part of which is surgically implanted, that stimulates the auditory nerve to give D.H. a sense of

6    sound.  She uses speech and listening as her primary mode of communication.  Though she

7    attends school in a general-education classroom with non-disabled students, D.H. does not hear

8    everything spoken in class.  Consequently, she relies on visual strategies, such as lip reading and

9    observation of the actions of peers, as well as educated guesses to fill in for sentences that she

10   does not hear.  D.H. is not always aware of when she has not heard something.  In addition, she

11   has some difficulty communicating in that she sometimes mumbles, speaks very softly, and has

12   difficulty producing certain sounds.  Nevertheless, D.H. has earned excellent grades and is an

13   active participant in class and social life at school.

14         At the April 20, 2009 Individualized Education Program ("IEP") meeting, the District

15   offered D.H. the following: general education placement with specialized academic instruction /

16   consultation with the resource specialist; deaf / hard of hearing ("DDH") services; audiological

17   services; speech language services; and extended school-year services.  The assistive technology

18   devices included, but were not limited to, an FM amplification system for the classroom and

19   school assemblies, a pass-around microphone, and close-captioning access during class videos.

20   The communication strategies, accommodations, and modifications called for in the IEP

21   included, but were not limited to, written directions, access to copies of peers' notes, consistent

22   home / school communication, access to quiet work environments, classroom doors closed to

23   eliminate noise, teachers repeating / rephrasing other students' responses, extra time for some

24   assignments, and preferential seating.  In addition to these accommodations, D.H.'s parents

25

26

27         [1] The relevant facts are undisputed.  Thus, this section primarily summarizes the factual
     background presented in the Court's March 14, 2011 Order denying D.H.'s motion for partial
28   summary judgment as well as the OAH's October 28, 2009 Decision.

1    requested Computer Assisted Realtime Captioning ("CART"[2]), a real-time transcription service

2    that displays words on a computer screen as they are spoken.  The IEP denied the request as

3    unnecessary to provide D.H. with a free appropriate public education ("FAPE").

4          On May 28, 2009, D.H. filed a due-process-hearing request under the IDEA.  The only

5    issue raised was the District's failure to offer CART services.  Prior to the hearing, the District

6    offered to give D.H. transcription services similar to CART, although the speech would be

7    summarized rather than transcribed word for word.  The service would have been provided on

8    the condition that D.H.'s parents consent to it as a part of the IEP.  On September 14, 2009, the

9    District filed its own due-process-hearing request, seeking a declaration that the August 10, 2009

10   offer of transcription services provided D.H. with a FAPE.

11         On October 28, 2009, the administrative law judge ("ALJ") found that the April 20, 2009

12   IEP in its original form provided D.H. with a FAPE and that CART services were not required.

13   Thereafter, D.H. appealed that decision to this Court.  In addition to seeking reversal of the

14   ALJ's decision, D.H. also asserts claims for violations of § 504 of the Rehabilitation Act and

15   violations of the ADA.

16         On April 9, 2010, D.H. moved for partial summary judgment as to her third claim,

17   appealing the ALJ's decision.  The District opposed.  Ultimately, the Court denied D.H.'s

18   motion and affirmed the ALJ's decision, concluding that "the April 20, 2009 IEP complied with

19   the IDEA mandate of a free appropriate public education."  (March 14, 2011 Order 10:4–9.)

20         The parties now cross-move for summary judgment.  In their cross-motions, both parties

21   address D.H.'s claim alleging violations of the ADA.  D.H. also requests in her motion that the

22   Court "revisit its prior denial of summary judgment under IDEA."  (Def.'s Mot. 6:19–20 [Doc.

23   36].)  Both motions are opposed.[3]

24

25         [2] A quick internet search shows that the acronym "CART" also stands for
"Communication Access Real-Time Translation" or "Computer Assisted Realtime
26   Transcription."  All of these services appear to be identical.

27         [3] Though both motions are opposed, the District did not file a separate opposition to
D.H.'s motion but rather requests that the Court take judicial notice of its summary-judgment
28   motion as its opposition to D.H.'s motion.  The Court **GRANTS** the District's request.

1  **II.     LEGAL STANDARD**

2      Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates

3  the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.

4  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material

5  when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v.*

6  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

7  1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury

8  could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

9      A party seeking summary judgment always bears the initial burden of establishing the

10  absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can

11  satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of

12  the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

13  showing sufficient to establish an element essential to that party's case on which that party will

14  bear the burden of proof at trial.  *Id.* at 322-23.  "Disputes over irrelevant or unnecessary facts

15  will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

16  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

17      "The district court may limit its review to the documents submitted for the purpose of

18  summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San*

19  *Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not

20  obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allen*, 91

21  F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251

22  (7th Cir. 1995)).  If the moving party fails to discharge this initial burden, summary judgment

23  must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H.*

24  *Kress & Co.*, 398 U.S. 144, 159-60 (1970).

25      If the moving party meets this initial burden, the nonmoving party cannot defeat summary

26  judgment merely by demonstrating "that there is some metaphysical doubt as to the material

27  facts."  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);

28  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence

09cv2621

1   of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing

2   *Anderson*, 477 U.S. at 242, 252).  Rather, the nonmoving party must "go beyond the pleadings"

3   and by "the depositions, answers to interrogatories, and admissions on file," designate "specific

4   facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R.

5   Civ. P. 56(e)).

6          When making this determination, the court must view all inferences drawn from the

7   underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at

8   587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate

9   inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on

10  a motion for summary judgment." *Anderson*, 477 U.S. at 255.

11

12  **III.    DISCUSSION**[4]

13         **A.    ADA Claim**

14         "FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not

15  identical." *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008).  However, "[the] § 504

16  regulations distinctly state that adopting a valid IDEA IEP is sufficient but not necessary to

17  satisfy the § 504 FAPE requirements." *Id.* (citing 34 C.F.R. § 104.22(b)(2)); *see also Scanlon by*

18  *Birkner v. San Francisco Unified Sch. Dist.*, No. C 91-2559, 1994 WL 860768, at *10 (N.D. Cal.

19  Apr. 14, 1994) ("Because the District complied with the requirements of IDEA, the District also

20  satisfied the education requirements of the Rehabilitation Act."), *aff'd mem.* 69 F.3d 544, 1995

21  WL 638275 (9th Cir. 1995).  Furthermore, "there is no significant difference in the analysis of

22  rights and obligations created by [the Rehabilitation Act and the ADA]." *Vinson v. Thomas*, 288

23  F.3d 1145, 1152 n.7 (9th Cir. 2002); *see also Lemahieu*, 513 F.3d at 937 (recognizing the

24  similarity for FAPE analysis).  Consequently, a plaintiff's failure to show a deprivation of a

25

26

        [4] D.H. indicates that she is no longer pursuing her § 504 claim and monetary damages.
27  As a result, she requests that the Court dismiss without prejudice her § 504 claim.  (Pl.'s Mot.
    5:8–10 [Doc. 36].)  Accordingly, the Court **GRANTS** D.H.'s request and **DISMISSES**
28  **WITHOUT PREJUDICE** her § 504 claim.

                                                                                        09cv2621

1  FAPE under the IDEA dooms a claim under § 504, and, accordingly, under the ADA.  *See K.M.*

2  *v. Tustin Unified Sch. Dist.*, No. SACV 10-1011, 2011 WL 2633673, at *14 (C.D. Cal. July 5,

3  2011) (citing *D.F. v. Western Sch. Corp.*, 921 F. Supp 559, 574 (S.D. Ind. 1996) ("Other courts

4  entering summary judgment on IDEA claims have summarily dismissed accompanying

5  Rehabilitation Act and ADA claims.").

6       The District argues that the fact that D.H. cannot show a deprivation of a FAPE under the

7  IDEA dooms her § 504 claim, and accordingly, her ADA claim.  (Def.'s Mot. 4:17–5:13 [Doc.

8  35].)  D.H. responds that none of the cases cited by the District establish that being denied a

9  FAPE under the IDEA is a predicate to liability under the ADA, but instead the cases cited show

10  the need to evaluate the elements of the claims under the IDEA and ADA independently.  (Pl.'s

11  Opp'n 7:1–19.)  D.H. cites *Payne v. Peninsula School District*, 653 F.3d 863 (9th Cir. 2011), to

12  support her argument.  (*Id.*)  The Court agrees with the District.

13       To begin, D.H.'s reliance on *Payne* is misplaced.  In *Payne*, the Ninth Circuit addressed

14  *en banc* the circumstances under which the IDEA's exhaustion requirement bars non-IDEA

15  federal or state law claims.  The court held that "the IDEA's exhaustion requirement is a claims

16  processing provision that IDEA defendants may offer as an affirmative defense," and that the

17  "IDEA's exhaustion provision applies only in cases where the relief sought by a plaintiff in the

18  pleadings is available under the IDEA."  *Payne*, 653 F.3d at 867, 871.  These holdings have no

19  bearing on the issue currently before the Court.  Furthermore, the proposition that D.H. cites in

20  *Payne*—"[n]othing in the IDEA protects a school from non-IDEA liability simply because it was

21  making a good-faith attempt to educate its disabled students"—is neither here nor there.  The

22  District does not argue that the IDEA protects it from non-IDEA liability, and whether the

23  District made a "good-faith attempt to educate" D.H. is also not an issue before the Court.  *See*

24  *id.* at 877.

25       Next, the Court rejects D.H.'s characterization of the cases that the District cites, such as

26  *Lemahieu*, *Scanlon*, and *Western School Corporation*.  D.H. understands the District's reliance

27  on these cases to mean that a plaintiff "must establish a FAPE violation under IDEA as a

28  necessary element to her ADA claim."  (Pl.'s Opp'n 7:4–11.)  That is wrong.  To the contrary,

09cv2621

1    these cases are clear that the relationship between a FAPE under the IDEA and a FAPE under §

2    504 (and, by extension, the ADA) is not about necessity, but rather sufficiency. *See Lemahieu*,

3    513 F.3d at 933 ("[A]dopting a valid IDEA IEP is *sufficient but not necessary* to satisfy the §

4    504 FAPE requirements."). A valid IDEA IEP is sufficient to satisfy the § 504 FAPE

5    requirements, and there is no significant difference between the analysis under § 504 and the

6    ADA. *Id.*; *Vinson*, 288 F.3d at 1152 n.7. Therefore, a valid IDEA IEP is also *sufficient but not*

7    *necessary* to satisfy the ADA's FAPE requirements. *See Lemahieu*, 513 F.3d at 933; *Vinson*,

8    288 F.3d at 1152 n.7; *Scanlon*, 1994 WL 860768, at *10.

9           In concluding that the District's April 20, 2009 IEP complied with the IDEA, the Court

10   previously found the following:

11                  Plaintiff attended a regular public school. She received an FM
                    amplification system for classroom and school assemblies, including a
12                  pass-around microphone to capture the input of her peers. She also
                    received access to close captioning for video presentations at school.
13                  With these services she earned excellent grades, predominantly As and
                    some Bs. These assistive technologies were offered to her again with
14                  the April 20, 2009 IEP. In addition, she was provided with preferential
                    seating away from nosie, access to copies of her peers' or teacher's
15                  lecture notes, written directions, an extra set of textbooks as needed,
                    access to a quiet work environment, and extra time for some
16                  assignments. Finally, her teachers were provided with information
                    packets and training regarding Plaintiff's hearing loss and the necessary
17                  accommodations, including the need to face Plaintiff when giving
                    instruction, pass the microphone around the class during other students'
18                  participation, and repeating or rephrasing other students' responses.
                    Plaintiff was also provided with specific deaf and heard of hearing
19                  services and speech and audiological services.

20   (March 14, 2011 Order 8:19–9:4 (citations omitted).) D.H. simply has not shown that the

21   District failed to give meaningful consideration to her needs. Thus, it is clear that D.H.'s ADA

22   claim fails on the merits for the same reasons that her IDEA claim failed.

23

24         **B.      D.H.'s Appeal under IDEA**

25          Though the conclusion above also disposes of D.H.'s request to revisit the Court's March

26   14, 2011 Order with respect to the issue of meaningful consideration, the Court also denies

27   D.H.'s request on additional grounds. In her request to revisit the previous order, D.H. includes

28   the issue of whether the IEP had to "defer to [D.H.'s] preference for CART under Education

1  Code Section 56345(d)(4)." (Pl.'s Mot. 21:9–12.)  Foremost, D.H. fails to provide any legal

2  authority that such deference to a student's preference is warranted under the ADA in a public-

3  school setting.  Neither the California Education Code § 56345 nor 28 C.F.R. § 35.160 mandate

4  any deference to a student's preferences.  In fact, neither statute even contains the words

5  "preference" or "deference."  Appendix A to Part 35—not the preamble as D.H. claims—does

6  state that "[d]eference to the request of the individual with a disability *is desirable*," but that is

7  hardly a mandate.[5]  It is merely a preference.

8      While the petitioning party bears the burden of proof at the administrative level when

9  seeking relief under the IDEA, the party challenging the administrative decision in federal

10 district court has the burden of persuasion on his or her claim.  *Schaffer v. Weast*, 546 U.S. 49,

11 57 (2005); *Clyde K. v. Puyallup Sch. Dist. No. 3*, 35 F.3d 1396, 1399 (9th Cir. 1994) (overruled

12 on other grounds).  Based on the discussion here and in the Court's March 14, 2011 Order, D.H.

13 simply fails to meet her burden.  *See id.*

14

15 **IV.   CONCLUSION & ORDER**

16     In light of the foregoing, the Court **GRANTS** Defendant the District's motion for

17 summary judgment (Doc. 35), and **DENIES** Plaintiff D.H.'s cross-motion for summary

18 judgment (Doc. 36).

19     **IT IS SO ORDERED.**

20

21 DATED: June 11, 2012

22                                          M. James Lorenz
                                          United States District Court Judge

23

24 COPY TO:
   HON. NITA L. STORMES
   UNITED STATES MAGISTRATE JUDGE

25
   ALL PARTIES/COUNSEL

26

27 ──────────────

28 [5] The appendix is also only meant for guidance.  Thus, it would have little legal weight here even if its language suggested that deference is required.

09cv2621

8