

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D.H., by and through her Guardian Ad Litem, KEVIN HARRINGTON,

Plaintiff,

v.

POWAY UNIFIED SCHOOL DISTRICT,

Defendant.

Civil No. 09-cv-2621-L(NLS)

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DOC. 59]**

On August 3, 2013, the Ninth Circuit reversed this Court's decision and remanded this case for further proceedings. [Doc. 57.] On September 23, 2013, the Ninth Circuit denied petitions for rehearing and rehearing *en banc*. [Doc. 54.] On October 21, 2013, the Mandate of the Ninth Circuit was spread. [Doc. 56.] On October 22, 2013, Plaintiff D.H. filed an *ex parte* motion for a temporary restraining order. [Doc. 59.] The Court will evaluate this *ex parte* motion as a motion for preliminary injunction. (*See Court Order* [Doc. 60].)

This Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS** D.H.'s motion for a preliminary injunction.

//

**I. BACKGROUND[1]**

D.H. is a deaf student eligible for special education who is attending school in the Poway Unified School District. She has moderate-to-profound hearing loss, and a cochlear implant in her right ear and uses a hearing aid in her left ear. The cochlear implant is an electronic device, part of which is surgically implanted, that stimulates the auditory nerve to give D.H. a sense of sound. She uses speech and listening as her primary mode of communication. Though she attends school in a general-education classroom with non-disabled students, D.H. does not hear everything spoken in class. Consequently, she relies on visual strategies, such as lip reading and observation of the actions of peers, as well as educated guesses to fill in for sentences that she does not hear. D.H. is not always aware of when she has not heard something. In addition, she has some difficulty communicating in that she sometimes mumbles, speaks very softly, and has difficulty producing certain sounds. Nevertheless, D.H. has earned excellent grades and is an active participant in class and social life at school.

At the April 20, 2009 Individualized Education Program ("IEP") meeting, the District offered D.H. the following: general education placement with specialized academic instruction / consultation with the resource specialist; deaf / hard of hearing ("DDH") services; audiological services; speech language services; and extended school-year services. The assistive technology devices included, but were not limited to, an FM amplification system for the classroom and school assemblies, a pass-around microphone, and close-captioning access during class videos. The communication strategies, accommodations, and modifications called for in the IEP included, but were not limited to, written directions, access to copies of peers' notes, consistent home / school communication, access to quiet work environments, classroom doors closed to eliminate noise, teachers repeating / rephrasing other students' responses, extra time for some assignments, and preferential seating. In addition to these accommodations, D.H.'s parents

---

[1] The relevant facts are undisputed. Thus, this section primarily summarizes the factual background presented in the Court's March 14, 2011 Order denying D.H.'s motion for partial summary judgment as well as the OAH's October 28, 2009 Decision.

requested Computer Assisted Realtime Captioning ("CART"[2]), a real-time transcription service that displays words on a computer screen as they are spoken. The IEP denied the request as unnecessary to provide D.H. with a free appropriate public education ("FAPE").

On May 28, 2009, D.H. filed a due-process-hearing request under the IDEA. The only issue raised was the District's failure to offer CART services. Prior to the hearing, the District offered to give D.H. transcription services similar to CART, although the speech would be summarized rather than transcribed word for word. The service would have been provided on the condition that D.H.'s parents consent to it as a part of the IEP. On September 14, 2009, the District filed its own due-process-hearing request, seeking a declaration that the August 10, 2009 offer of transcription services provided D.H. with a FAPE.

On October 28, 2009, the administrative law judge ("ALJ") found that the April 20, 2009 IEP in its original form provided D.H. with a FAPE and that CART services were not required. Thereafter, D.H. appealed that decision to this Court. In addition to seeking reversal of the ALJ's decision, D.H. also asserts claims for violations of § 504 of the Rehabilitation Act and violations of the Americans with Disabilities Act ("ADA").

On April 9, 2010, D.H. moved for partial summary judgment as to her third claim, appealing the ALJ's decision. The District opposed. Ultimately, the Court denied D.H.'s motion and affirmed the ALJ's decision, concluding that "the April 20, 2009 IEP complied with the IDEA mandate of a free appropriate public education." (March 14, 2011 Order 10:4–9.)

Then, the parties cross-moved for summary judgment. In their cross-motions, both parties addressed D.H.'s claim alleging violations of the ADA. D.H. also requested that the Court "revisit its prior denial of summary judgment under IDEA." (Def.'s Mot. 6:19–20 [Doc. 36].) Both motions were opposed.[3] On June 12, 2012, the Court granted the District's motion

---

[2] A quick internet search shows that the acronym "CART" also stands for "Communication Access Real-Time Translation" or "Computer Assisted Realtime Transcription." All of these services appear to be identical.

[3] Though both motions were opposed, the District did not file a separate opposition to D.H.'s motion but rather requested that the Court take judicial notice of its summary-judgment motion as its opposition to D.H.'s motion. The Court granted the District's request.

for summary judgment and denied D.H.'s cross-motion for summary judgment. (June 6, 2012 Order [Doc. 46].) The Court essentially held that D.H.'s ADA claim failed on the merits for the same reasons that her IDEA claim failed. (*Id.* 7.) D.H. successfully appealed this case to the Ninth Circuit. *K.M. ex rel. bright v. Tustin Unified School Dist.*, 725 F.3d 1088 (9th Cir. 2013.) In reversing this Court's holding, the Ninth Circuit explained that "the success or failure of a student's IDEA claim [does not dictate], as a matter of law, the success or failure of her Title II claim." *K.M.*, 725 F.3d at 1101.

D.H. is now in her last year of high school. (*Decl. D.H.* [Doc. 55-2] ¶ 1.) She has now filed a motion for preliminary injunction, which the District opposes. D.H. seeks injunctive relief in the form of an order "compelling Poway to provide her with CART for classes at school." (*Mot. Prelim. Inj.* [Doc. 59] 26.)

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy" and is "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 20 (2008).

## III. DISCUSSION

### A. Judicial Notice

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron*

*v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Both parties request judicial notice for certain documents, which all appear to be matters of public record. (Docs. 62-1, 63-1.) Neither party opposes. Accordingly, the Court **GRANTS** the parties' requests.

**B. D.H. Has Shown a Likelihood of Success on the Merits of Her ADA Effective Communications Regulation Claim**

Public schools must comply with the ADA. *K.M.* 725 F.3d 1097. Therefore, under the ADA effective communications regulation, public schools must "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). The regulations further provide, in relevant part, that:

> (b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (b)(2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. *In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities*. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

*Id*. (emphasis added).

A public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164.

**1. D.H.'s Trouble Hearing During Class**

Hearing what is said at school is still "very difficult and uncomfortable" for D.H.. (*Decl.*

*D.H.* ¶ 2.) In fact, even with concentration and focus, D.H. can only hear "some of what is said." (*Id.*) D.H. struggles even more when trying to follow class discussions with multiple people or in large classes, and misses "much of what is said" in these situations. (*Id.*) D.H. "frequently come[s] home from school with headaches" due to the amount of strain listening in class requires. (*Id.*) She is struggling to hear what is said in all of here current classes. (*Id.* ¶¶ 3, 4.) The District does not dispute that D.H. is still having these problems.

Instead, the District suggests that "[i]n response to Plaintiff's request the District determined based on the input from Plaintiff's teachers, services providers, parents, and assessments, that CART was not necessary because there was another effective means of communication available." (*Opp'n* 6.) Essentially, the District claims that it has provided other effective means of communication for D.H., and has thus satisfied its obligations under 28 C.F.R. § 35.160.

**2. D.H. Can Likely Show That The District Has Not Met Its Obligations Under 28 C.F.R. § 35.160.**

The District points out that "the District offered Plaintiff meaning for meaning transcription using either Typewell or C-Print methodologies," both of which "provide real time meaning for meaning transcription." (*Opp'n* 6.) The District even contends that these methodologies "provide[] a more complete picture of what occurs in the classroom." (*Id.* 7.) In addition, "the District provided Plaintiff with additional supplementary aids, assistive technology devices, and communication strategies." (*Id.*) These aids and devices include, but are not limited to, "an FM amplification system for classroom and school assemblies, a pass-around microphone, and close captioned access during class videos." (*Id.*) In addition, the communication strategies included "written directions, access to a quiet work environment, [closing the] classroom door [] to eliminate noise, teachers repeating/rephrasing other student's responses, extra timed [sic] for time [sic] assignments and preferential seating." (*Id.*) The District's position is unsupported by the record.

Although the District may have provided all of the accommodations listed above, they do

not "ensure that communications [with D.H.] are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). As explained above, despite these alleged accommodations, D.H. is still having trouble hearing in class. (*Decl. D.H.* ¶¶ 2, 3, 4.) Moreover, the meaning-for-meaning transcription devices, which the District laud as "more complete" and effective, are so confusing to D.H. that she would rather have no transcription at all then have to use these alternatives. (*Id.* ¶ 8.) Such is not the case with CART, which D.H. says makes it "very easy for [her] to find exactly what [she] missed and pick right back up with what is being said." (*Id.* ¶ 6.) With CART, "hearing is not difficult or uncomfortable" for D.H. and she does not have to "concentrate intensely and strain." (*Id.* ¶ 7.) D.H. does not get headaches when she is provided with CART. (*Id.*) In addition, the District fails to present any evidence that they gave D.H.'s requests for CART "primary consideration" as required by 28 C.F.R. § 35.160(b)(2).

Moreover, these accommodations are not always provided to D.H. (*Decl. D.H.*, Ex. 1, ¶ 11.) For instance, videos and clips are not always captioned which prevents D.H. from understanding what is happening in class. (*Id.*) The FM system "makes crackling and white noise sounds and other noises that are very distracting" and the pass-around microphone is not always used. (*Id.*) Also, teachers do not always repeat or rephrase, and when they do, it is not always in a way that allows D.H. to understand. (*Id.*)

Further, the District suggests that D.H. has provided no evidence "that the District denied her equal and effective communication under the ADA" because she could "cite to no examples of situation wherein her concerns regarding her disability were not addressed." (*Id.* 7.) In support of this argument, the District cites D.H.'s August 23, 2011 deposition. However, the deposition does not show what The District says it does. Instead, the cited portion of the deposition demonstrates that during her 7th grade year in school, D.H. did not believe that there were "any reasons why [she] couldn't voice [her] complaints or concerns to any of [her] teachers and administrators." (*August 23, 2011 Decl. D.H.* [Doc. 38] 38:13-24.) It also shows that D.H. did not complain to teachers regarding her trouble hearing due to feelings of humiliation as well as her feeling that she could not make the complaints known to her teachers. (*Id.* 39:1-5.) This evidence does not support the District's claim that "Plaintiff could cite to no examples of

situations wherein her concerns regarding her disability were not addressed." (*Opp'n* 7.) Quite to the contrary, the crux of Plaintiff's entire lawsuit and pending motion is that her concerns regarding her disability have not been addressed continuously for years.

The District also argues that D.H.'s excellent grades and participation in school activities evidence that it has provided and continues to provide effective communication under the ADA. (*Id.* 7.) D.H.'s good grades and participation do not absolve the District from its responsibilities under the ADA. While it is undisputed that D.H. is doing well in school, the District fails to explain how this shows that it complies with the ADA effective communication regulation in light of D.H.'s ongoing difficulties. These difficulties, which result in both physical and psychological pain, tend to show that the District does not communicate with D.H. in a manner "as effective as [it] communicat[es] with others." 28 C.F.R. § 35.160(a)(1).

In light of D.H.'s continued difficulties to hear in class and the inconsistent and inadequate accommodations the District has provided, the Court finds that D.H. is likely to establish that the District has violated the ADA's effective communications regulation.

### C. D.H. is Likely to Suffer Irreparable Harm

"The concept of irreparable harm, unfortunately, 'does not lend itself to definition." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)(quoting *Wisconsin Gas Co. V. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985.) The Fifth Circuit defines irreparable injury as an injury "for which compensatory damages are unsuitable." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992). The Seventh Circuit explained that "[o]nly harm that the district court cannot remedy following a final determination on the merits may constitute irreparable harm." *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1998). The Tenth Circuit has combined these definitions, and observed that "irreparable harm is often suffered when the injury can[not] be adequately atoned for in money, or when the district court cannot remedy [the injury] following a final decision on the merits." *Prairie Band*, 253 F.3d at 1250. In addition, the Ninth Circuit has held that immediate emotional and psychological injury "cannot be adequately compensated for by a

monetary award after trial." *Chalk v. U.S. Dist. Court Cent. Dist. California*, 840 F.2d 701, 710 (1988).

D.H. argues that she suffers irreparable harm "because she suffers physically and mentally without receiving CART." (*Mot. Prelim. Inj.* 21.) She claims that money cannot compensate her for her alleged injuries and cannot give her back her senior year in high school. (*Id.*) According to D.H., the only meaningful remedy that exists for her is an injunction, as she is in her last year of high school now. (*Id.* 21-22.) The Court agrees with D.H..

Like the plaintiff in *Chalk*, D.H. is suffering from injuries that "cannot be adequately compensated for by a monetary award after trial." *Chalk*, 840 F.2d at 710. Moreover, like the plaintiff in *Chalk*, the very nature of D.H.'s claim is extremely time sensitive as D.H. has only one year left in high school. *Id.* "A delay, even if only a few months...represents precious, productive time irretrievably lost to [D.H.]." *Id.* The District does not directly challenge D.H.'s claims of irreparable harm, but instead insists that D.H. has failed to demonstrate "immediate threatened harm," citing *Caribbean Marine Services Co., Inc. V. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). The District is wrong.

The District seems to believe that D.H. is requesting injunctive relief based *only* on the District's past failure to provide her with CART services in April 2009. (*Opp'n* 10.) Based on this belief, the District concludes that D.H. has not shown irreparable harm because "alleged past conduct does not amount to a present controversy which warrants relief." (*Id.*) However, the District fails to cite to any evidence or provide any substantive explanation in support of this argument. The problem with the District's argument is that while D.H. is complaining about past, she is also complaining about present and future harm, and requesting injunctive relief to address this harm. The operative complaint does not limit D.H.'s request for injunctive relief to remedy only past violations and clearly calls for "an Order compelling Defendants to provide CART" in light of all the District's alleged violations of the ADA. (*First Am. Compl.* [Doc. 6] ¶ 27.) Such a request for injunctive relief would defy logic if D.H. were only seeking injunctive release based on the District's failure to provide her with CART services one time in April 2009. Also, the District's conclusory arguments that D.H.'s pain is not "severe enough" to constitute

irreparable injury and that psychological stress does not constitute irreparable injury are completely inadequate, and contradicted by Ninth Circuit authority. *See Chalk*, 840 F.2d at 710.

Therefore, the Court finds that D.H. is likely to suffer irreparable harm if this Court does not impose the requested injunctive relief.

**D. The Balance of Equities Favors D.H.**

D.H. suggests that, for a number of reasons, the District "will suffer little or no hardship if compelled to provide D.H. with CART." (*Mot. Prelim. Inj.* 22.) First, other public schools in California and other states provide CART to their students. (*Administrative Record* 128, 480, 968.) Second, CART is required in state court and administrative proceedings. Cal. Civ. Code § 54.8. Third, CART was provided to D.H. by the State at her administrative hearing and by Poway at a school board meeting. (*Administrative Record* 268; *Decl. D.H.* ¶ 6.) These facts, according to D.H., show that the requested injunction would only compel the District to do what it is required to do, what it has done in the past, and what other public entities regularly do under the "effective communications regulation." (*See Mot. Prelim. Inj.* 22.)

The District fails to muster any argument to the contrary, apart from their unsubstantiated claims that "[i]f an injunction is issued in this case, the District would be required to use limited funds for a purpose not required by law." (*Opp'n* 11.) Although the District does not elaborate on this argument, it is clear that it has two parts: a cost component and a legal requirement component.

Noticeably lacking from the District's argument are essential pieces of information regarding the financial impact of CART, such as evidence regarding the cost of CART, the school's budget, and the cost of other accommodations that the District is providing D.H. This evidence is necessary for the Court to evaluate the District's claim regarding limited funds. Thus, the Court cannot determine that implementing CART would present a hardship to the

District with respect to its "limited funds."[4] Further, as explained above, D.H. has shown a likelihood of success on the merits, which refutes the Districts conclusory claim that CART "is not required by law."

In light of Plaintiff's continued challenges to hear in class and the foregoing analysis, the Court finds that the balance of the hardships weighs in favor of granting the requested injunction.

### E. An Injunction is in the Public Interest

D.H. suggests that the requested injunction is in the public interest "given the importance of education and the ADA's mandate to eliminate disability discrimination." (*Mot. Prelim. Inj.* 25.) In support of her argument, D.H. sites federal statutes and seminal Supreme Court case law. (*Mot. Prelim. Inj.* 23-24.) The District does not contest D.H.'s claims. Instead, the District argues that "there has been no determination that the District has discriminated against Plaintiff in anyway whatsoever." (*Opp'n*. 12.) Further, the District suggests that if an injunction issues, "the District [will] be required to expend already limited funds to provide Plaintiff with CART" and that "these funds [will] be taken away from other students in the District for an unjustified reason." (*Id.*) The District's argument is unpersuasive.

First, the District's argument evidences a misunderstanding of D.H.'s burden with respect to injunctive relief. At this point in the proceedings, injunctive relief can be found appropriate even if "there has been no determination that the District has discriminated against Plaintiff." As explained above, D.H. has demonstrated a likelihood of success on the merits of this case. Although this falls short of a determination that the District has or is discriminating against D.H., it is still enough for injunctive relief to be appropriate.

Second, on the record before it, the Court finds that the public interest of providing equal access to education far outweighs the public interest of allocating some nebulous "limited funds"

---

[4] The same is true for any similar argument the District purports to make under 28 C.F.R. § 35.164.

to a disabled child instead of some "other students." Although there appears to be no debate that providing D.H. with CART would cost the District money, the District has failed to cite to any evidence showing that the expense would negatively affect other students or the public in general in any meaningful way.

Therefore, the Court finds that this factor weighs in favor of granting the requested injunction.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** D.H.'s motion for preliminary injunction and **ORDERS** the District to provide D.H. with CART during classes at school.

**IT IS SO ORDERED.**

DATED: December 19, 2013

M. James Lorenz
United States District Court Judge